STOCKTON
*v.*
STANBROUGH.

........................ ........................... .............

## McDowell et al. *v.* Read et al.

Where a court is called upon to enforce a right, it may avail itself of its jurisdiction over the person to do justice relative to a subject matter beyond its jurisdiction, though lands be affected by the decree.

3 391
45 368

3 391
52 1592

3 391
f125 597

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J.
Benjamin and *Mieou*, for the appellants. The object of this suit against the garnishee is, to annul a contract made in fraud of the rights of plaintiffs, creditors of the defendants. We contend : 1st, that the contract, which we attack, is invalid; and 2d, that if invalid, the court may administer the proper remedy.

I. As to the validity of the contract. Contracts are valid or invalid, according to the law of the place where they are made, and the law controlling the parties who make them. A contract void where it is made, is void every where. *Astor* v. *Price*, 7 Mart. N. S. 409. The validity of a contract is determined by the law of the country where it is made, although the delivery of the thing is to take place abroad. *Lynch* v. *Postlethwaite*, 7 Mart. 213. A will, valid where it was made, vests the property in the legatee. *Day* v. *Thibodeaux*, 5 Mart. N. S. 496. A verbal authority to sell a slave, given in a State where a verbal sale of a slave would be good, is legal proof of authority to sell by written title here. *Thatcher* v. *Walden*, 5 Mart. N. S. 496. A contract must be enforced, according to the law of the place where it was entered into. *Saul* v. *Creditors*, 5 Mart. N. S. 585. "If an agreement," says Judge Porter, " be not binding where it was made, it cannot become so by being brought into this State." *Bell* v. *James*, 6 Mart. N. S. 76. In contracts for loan, the law of the place of the contract governs in questions of usury, and consequently of the validity, although the security be a mortgage upon lands in another State. *De Wolf* v. *Johnson*, 10 Wheaton, 367, 383. In the common case of bills of exchange or notes, the rights and obligations of each party are fixed by the law of the place where the party draws, accepts, or endorses. Damages are due by one law, interest by another. One party is held by one species of notice, another by notice in some other form. Story on Notes, sec. 154 to 170. The general rule is, that every contract is governed as to its validity, nature, interpretation and effect, by the *lex loci contractus*. Ibid. sec. 155. If void and illegal where made, it is void every where. Ibid. sec. 156. When a contract is to be performed in another place, the general rule is that its validity is tested by the law of the place of performance. Ibid. sec. 165. But this exception can only apply when the foreign law only is regarded, or, in other words, where the whole subject of the contract is to be performed in another country. When a contract is to be performed partly in one country and partly in another, the law of each will operate on the respective portions of the contract. If the law of Mississippi operate to sanction the legal title of the trustee, the law of Louisiana, where the trust is to be accomplished, will investigate and decide upon the legality of its purposes. The rule and the exception are thus enforced, each in the case to which it properly applies. No court is bound to hold valid a contract injurious to public rights, offending the morals, or contravening the policy of the country, in which it presides. It is a consequence of the admission of the *lex loci*, that contracts, void where made, are void every where. So the personal capacity, or incapacity to contract, depends upon the law of the domicil. The competency of a married woman to contract, is considered to depend on the law of the place of marriage. 2 Kent, sec. 39, p. 458. The prohibition, by the laws of Louisiana, of preferences by its citizens who become insolvent, renders such insolvents incapable of making such contracts. The rights of parties to an obligation, were settled by Judge Bullard, upon the laws of New York, after a very learned and elaborate examination of the chan-

McDowell
*v.*
Read.

cery decisions, regarded as authority in that State. *King* v. *Harman*, 6 La. 607. So a contract of insurance was decided according to the law of the place where it was made. *Shiff.* v. *La. Ins. Co.*, 6 Mart. N. S. 631. A bill of sale made in Kentucky, and valid there, is good here. *Hall* v. *Mulhollan,* 7 La. 388. Where a testator in Georgia directed his slaves to be manumitted in five years after his death, and they were brought to Louisiana within the five years, it was held here, that the bequest was invalid, because prohibited by the laws of Georgia, although our laws contain no such prohibition. *Mary* v. *Morris*, 7 La. 188.

But the defendants seek to bring this case within the exception to the rule. Admitting the force of the *lex loci contractus*, in ordinary cases, they say that, if a contract is to be performed in another country, then the laws of that country must alone decide upon its validity. Does this principle cover the case before the court. The principal and leading object of the deeds of trust, was to give a preference to the particular creditors over the plaintiffs. The deed had no reference to the laws of Mississippi. That the property was situated there was utterly immaterial. The trustee was expected to take possession and sell it, but these steps were merely preparatory to a division of the preceeds, between preferred creditors, which was the great object to be attained by the deed. As the domicil of the trustee was in New Orleans, it is here that he is primarily liable to be called upon, whether in or out of court, to execute his trust. It is true that he would be amenable to the laws of Mississippi, if he should happen to be there, but that would be a merely accidental jurisdiction ; and, he would be equally amenable to the laws of New York, if found there. It is impossible, therefore, to extend the laws of Mississippi, so far as to say that, merely because the lands of a debtor residing in this State are found in Mississippi, therefore, the owner, though residing here, is not subject to our laws. If a contract, valid in itself, is to be wholly executed in another country, the law of that country governs its execution. So, if money be loaned here, payable in Mississippi, the law of Mississippi governs as to the demand, the payment, and the interest. But on the other hand, where a *bonâ fide* contract in Louisiana stipulated for payment in New York, but at a rate of interest exceeding that permitted in the latter State, the court here held the contract to be valid. A distinction was taken between the validity of the contract, and its mere performance. The nature and validity of the engagement were held to be tested by the law of the place where it was made, although its performance was to take place elsewhere. *Depau* v. *Humphreys*, 8 Mart. N. S. 34. This case was one very elaborately considered by Judge Martin, and the opinion is clearly correct. It would not cover a mere evasion of the law of New York, by a contract made here for the purpose of escaping the penalties of usury; but if *bonâ fide*, the law of the place of contract would be held to govern as to the validity. The principle is precisely the same adopted by this court in the case of the assignments by the *Leavitts* of their property in Louisiana. In deciding upon the validity of that contract, the laws of New York only were regarded, although the property was here, and the contract, if made here, would have been invalid. Why is not the converse of the proposition true ? A married woman in New York, is permitted to become security for the debt of her husband, or to mortgage her separate property for his debt. If such a mortgage upon the separate property of the New York wife were sought to be enforced here, would it be possible for our courts to extend the protection of our peculiar law over the wife, who had never been in this State ? Clearly not. The mortgage would be enforced. But if, on the other hand, a Louisiana wife, owning property in New York, were to mortgage that property here, to secure the debt of her husband, the contract could not be enforced any where. Being invalid and illegal here, where made, it would be void every where else. It is obvious that there is, and must be, a distinction between the validity of a contract in reference to property, and the property itself. The property is governed by the law of its *situs*. The jurisdiction of Louisiana does not extend to putting a litigant into possession of land in Mississippi ; yet a contract made here by our own citizens, owning lands there, must derive its validity from our laws. The laws of insolvency are as much a part of the policy of our jurisprudence. as those governing the relations of husband and wife. They operate upon all our citizens, and they stamp with reprobation a fraudulent preference of one creditor over another.

It is conceded that a trust deed is only a speceies of mortgage. The validity of a mortgage was decided by the Supreme Court of the United States, with reference to the laws of the place where the mortgage was made, although the lands were in another State. *De Wolf* v. *Johnson*, 10 Wheaton. The laws of interest and usury of that place, were taken as the test. In this case, the invalidity results from the laws of bankruptcy, but they equally prohibit and annul a mortgage intended to give unlawful preference. The principle, therefore, is the same, and the mortgage for the latter purpose, must be equally invalid. If a man claim the benefit of the Louisiana bankruptcy, he must surrender all his estate, no matter where it may lie. The prohibition of preferences would be idle, if a Louisiana debtor owning estates elsewhere could parcel them out to his creditors at pleasure, and to the prejudice of those who receive nothing. *Read, Sons & Co.* unquestionably violated the law of this State, and subjected themselves to imprisonment, when they attempted, by this deed, to class their creditors, and pay some to the exclusion of others. We hold, then, that the position of the land, can have no effect upon the validity of the contract. Its position is accidental; the contract is tested by the law of the place where made, and by the law to which the parties were subject.

II. As to the power of the courts of Louisiana to afford a remedy: The remedy is completely within the power of the court. Upon a naked question of title and possession the court could not act, because its officers have no power beyond their respective bailiwicks; but, where a contract is in question, its validity to be determined, and its provisions to be examined and enforced, any court having jurisdiction over the person, has power over the subject. Upon a similar question, the Supreme Court of the United States, (Ch. J. Marshall,) says: "In a case of fraud, of trust, or of contract, the jurisdiction of a court of Chancery is sustainable wherever the person be found, although lands not within the jurisdiction may be affected by the decree." *Massie* v. *Watts*, 6 Cranch, 160. It cannot be pretended that our courts have not jurisdiction as extensive as the courts of Chancery. Consequently, if a suit be brought here against a person duly cited, there may be a decree against him compelling him to account for properties sold elsewhere, to perform a trust, to execute a contract, or prohibiting him from consummating a fraud. If a naked question of title were involved, "the Circuit Court of Kentucky would be without jurisdiction." "But when the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of a contract or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction, wherever the person may be found." Same case, p. 158. The cases cited by this distinguished judge, strongly illustrate and support the principles here announced. They are so conclusive on the point that, we have not though it necessary to add one to those quoted by him. In the case of *Penn* v. *Lord Baltimore*, the Chancellor of England decreed a specific performance of a contract respecting lands in America. In *Arglasse* v. *Muschamp*, 1 Vernon, 75, when an objection to the jurisdiction, precisely similar to that now relied on, was made, the Chancellor replied: "This is surely only a jest put upon the jurisdiction of the court, by the common lawyers; for when you go about to bind the lands and grant a sequestration to execute a decree, then they readily tell you that the authority of this court is only to regulate a man's conscience, and ought not to effect the estate, but that this court must *agere in personam* only: and when, as in this case, you prosecute the person for a fraud, they tell you that you must not intermeddle here, because the fraud, though committed here, concerns lands that lie in Ireland, which makes the jurisdiction local, and so wholly elude the jurisdiction of this court." In the *Earl of Kildare* v. *Sir Morrice Eustace and Fitzgerald*, it was determined that. if the trustee live in England. the chancellor may enforce the trust, although the lands lie in Ireland. It would be impossible to find authorities more perfectly in point. The trustee, living here, may be compelled to execute a trust in reference to lands in Mississippi. If that trust be, in its inception a fraud upon our laws, may not the court prohibit its execution, and divert the funds in the hands of the trustee to a lawful purpose ?

*Mount*, for the garnishee. The judgment of the court below is correct and should be affirmed, because, if, as it is admitted, a debtor may, by the laws of Mississippi, prefer one or more creditors to the rest, by executing a conveyance of his property to a trustee for that purpose, and the laws of that State have

McDowell
*v.*
Read.

vested the title to the property conveyed in the trustee in the two deeds, it is clear that the courts of Louisiana could not divest that title; for the title to realty can only be acquired or lost by the *lex loci rei sitæ.* Story, Conf. of Laws, sec. 364, 365, 431. 7 Cranch, 115. 6 Wheaton, 577. The title of realty is exclusively subject to the *lex loci rei sitæ,* and will not pass by will, unless it conforms to that law. 10 Wheaton, 192. Nor would it pass by deed, unless in case of such conformation. By reference to these deeds it appears that the parties in executing them had reference to the laws of the State of Mississippi, where they were to be operative. If, by the terms of the contract, it appears that it is to be executed in another country, or that the parties had reference to the laws of another country, the place in which it is made bcomes immaterial, and it is to be governed by the laws of the country in which it is to be performed. 17 Johns. 511. 20 Johns. 229. *Holmes* v. *Remsen,* 4 Johns. Ch. R. 486, 487. So it is held that a contract void by the law of the place where made, is valid, if good by the law of the place of payment. Story Conf. of Laws, sec. 305. 20 Martin R. 22, 23, 24, 30. 10 Wheaton 367. 20 Johns. R. 102. 2 Simon R. 194. 2 Burr. 1076. 2 Kent, Com. 39th Lecture, 459.

A debtor, in failing circumstances, may prefer one creditor to another. 2 Johns. C. R, 306, 308, and authorities cited in *Marbury* v. *Brooks,* 5 Con. R. S. C. U. S. 345, 434. 6. Con. R. S. C. U. S. 223. 7 Peters R. 608. Assignments to secure existing *claims* and *engagements,* as well as for future advances and responsibilities, valid. 2 Johns. C. R. 306. Ib. 283. Where a trust is created for the benefit of a third person, without his knowledge at the time, he may afterwards affirm the trust and enforce its performance. *Moses* v. *Murgatroyd,* 1 Johns. C. R. 119. 3. Johns. C. R. 261. 4 J. C. R. 136. The fact that the grantor retains possession of property which he has conveyed is not fraudulent, where the deed authorizes it. 3 Cranch, 73; 1 Cond. Rep. 458. *Bogart* v. *Gardley,* 4 Sm. and Mar. 302. 2. Kent, 494, 530, notes. An assignment by a debtor, to *trustees,* for the benefit of all his creditors, is valid, without the previous assent of the creditors. 4 J. C. R. 522. 11 Wheaton, 78. If, as it is assumed, the deeds being made in Louisiana, are void by its laws, but are valid by the laws of Mississippi, so as to vest the title to the property in the trustee, then the trustee takes the title burthened with the trusts declared therein, and this court cannot change or alter the deeds, nor give any extraterritorial effect to that decree. If the deeds are invalid, then the trustee is ousted and divested of title, and has nothing wherewith to be charged. If they are valid, then the creditors who have assented and claim the benefit of the deeds, have an unquestionable right to have the trusts executed, upon a proper bill filed in the Chancery Court of Mississippi; and if the trustee were to refuse to carry out and effect the object of the trust-deeds, upon a proper showing to that effect, the Court of Chancery would appoint a new trustee.

*Prentiss,* on the same side. The judgment of the court was pronounced by

Eustis, C. J. A *fieri facias* having been issued on a judgment obtained by the plaintiffs against the defendants, in November, 1845, process of garnishment was taken out against *Wm. S. Mount* and *Co.* garnishees, in order to subject the effects of the defendants in their hands to the writ. *Wm. S. Mount* answered the interrogatories propounded, and acknowledged that certain property had been conveyed to him, situated in the State of Mississippi, in trust for the benefit of certain creditors. On these answers of the garnishee the plaintiffs filed their petition to set aside and annul the conveyances made by the defendants to the garnishee, on the ground of their having been made in fraud of the rights of the plaintiffs as creditors, and in violation of our laws. On this petition issue was joined by the garnishee; there was judgment in his favor, and the plaintiffs have appealed.

We have had this case a long time under advisement, and, after a thorough investigation of the subject, we are forced to dissent from the conclusions of the learned judge before whom the cause was tried. The argument at bar has been confined to the validity of two deeds of trust, and the power of the court over them, under the case as presented. There does not appear to be any dispute as to the facts of the case.

McDowell<br>v.<br>Read.

The deeds were executed in the city of New Orleans, on the 10th of May, 1845.   The first purports to be made by *Thomas J. Read* of the city of Louisville, Kentucky, and *John A. Read* of New Orleans, on the first part, certain creditors of the firms of *Thomas J. Read* and *Son* of Louisville, and *Thomas J. Read* and *Son* and *Company* of New Orleans, on the second part, and *William S. Mount* of the third part.   It conveys to *Mount* a plantation and slaves in Washington county, Mississippi, in trust for the benefit of the creditors mentioned.   The second deed of trust purports to be made by *Thomas J. Read, John A. Read,* and *Robert Y. Black,* styling themselves merchants, commercial copartners, trading under the firm of *Thomas J. Read, Son* and *Company,* in the city of New Orleans ; it conveys a lot of ground in Yazoo City, Mississippi, is of the same date, for the same purposes, and on the same trusts, as the first. They are both signed by the parties of the first part, and by *Mount,* the trustee, and were afterwards confirmed by the preferred creditors.   The trustee was not authorized to take possession ; but the grantors were to be permitted to retain it, until the 1st of January, 1847, when the sale of the property was to take place for cash, for the payment of the debts which should then be unsatisfied, at the request of the creditors or any one of them.

This cause was tried in February, 1847, subsequently to the time at which he was empowered to make the sales, and the record affords no evidence whether they have been made or not.   The prayer of the petition is that, the deeds of trust be annulled, and the garnishee be decreed to be bound to account to the petitioners as seizing creditors, for the property to him illegally conveyed. The district judge considered the case as confined to these issues, and we think correctly.

In relation to annulling the deeds of trust, the judge was of opinion that, the situation of the real property out of the jurisdiction of the State, was an obstacle to the court's rendering any judgment, where the object was to recover it.   We think the case referred to by the counsel for the plaintiffs, establishes the principle that, where a court is called upon to enforce a right, it may avail itself of its jurisdiction over the person to do justice relative to a subject matter beyond its territorial jurisdiction, though lands be effected by the decree. The contract made here between the defendants and *Mount* is the subject matter upon which the court is called upon to act.   Its validity is drawn in question. The responsibility of the trustee to other creditors than those provided for, depends upon its legality.   Even if the judgment to be rendered should not be efficient in the State where the property is situated, that fact, were it ascertained, we think would not be sufficient to authorize the court to withhold its action upon the contract.

We think the determination of this case would be necessarily effected by the fact of the sales having been made by the trustee under the deeds of trust. In assuming them to have been made, we might do him injustice ; and, as we think the District Court erred in rendering an absolute judgment against the plaintiffs, we prefer to remand the cause for a new trial, without being committed as to any future course, to closing it by a final judgment on a state of facts presented by the record, which may not be consistent with their present state, nor subject to the same principles.

The judgment of the District Court is, therefore, reversed, and the case remanded for a new trial ; the appellee paying the costs of this appeal.